NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Public Corruption & Civil Rights Section
JEFFREY M. CHEMERINSKY (Cal. Bar No. 270756)
Violent & Organized Crime Section
Assistant United States Attorneys
     1500/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8452/6520
     Facsimile: (213) 894-0141
     E-mail:    thomas.rybarczyk@usdoj.gov
                jeffrey.chemerinsky@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>MYRON CROSBY,<br><br>   Defendant. | No. CR 18-468(A)-SJO-2<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT MYRON CROSBY<br><br>Hearing Date: November 25, 2019<br>Hearing Time: 09:00 a.m.<br>Location:  Courtroom of the<br>      Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Thomas F. Rybarczyk and Jeffrey M. Chemerinsky, hereby files its Sentencing Position with respect to Defendant MYRON CROSBY.

///

///

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 11, 2019          Respectfully submitted,

                                  NICOLA T. HANNA
                                  United States Attorney

                                  BRANDON D. FOX
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  */s/ Jeffrey Chemerinsky*
                                  THOMAS F. RYBARCZYK
                                  JEFFREY M. CHEMERINSKY
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendant MYRON CROSBY ("defendant") conspired to commit two violent armed day-time robberies of postal carriers driving postal trucks.  These brazen robberies terrorized the victims and posed a serious danger to innocent life.  The crimes were carefully planned and executed, involving numerous conspirators who coordinated the robberies.  Defendant's role in these crimes was critical to their planning and execution – defendant helped organize the robberies, and then oversaw and assisted in their completion, including driving the car that was used to trap the victim driver's truck in the March 1, 2018 robbery.

Defendant pleaded guilty pursuant to a written plea agreement to Counts Six of the First Superseding Indictment charging him with Robbery of United States Property, in violation of 18 U.S.C. § 2114(a), regarding the March 1, 2018 robbery.  In his Plea Agreement, defendant also admitted his role in the February 1, 2018 robbery.

On October 21, 2019, the United States Probation Office ("USPO") filed a Presentence Report ("PSR") in which it determined that defendant's total offense level (after providing credit for acceptance of responsibility) under the United States Sentencing Guidelines ("USSG") is 30, defendant's criminal history category is I, and his Guidelines sentencing range is 97 to 121 months' imprisonment.

The government has no objections to the USPO's calculation of the total offense level and criminal history category for defendant. Considering all of the appropriate factors, the government believes a

sentence at the high end of this range, namely, 121 months' imprisonment to be followed by a five-year period of supervised release is sufficient, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. § 3553(a).

## II.   STATEMENT OF FACTS

Defendant and his co-conspirators, including his half-brother and co-defendant William Crosby IV ("William Crosby"), conspired to commit two armed robberies on February 1, 2018 and March 1, 2018.

### A.   February 1, 2018 Robbery

On February 1, 2018, defendant helped plan an armed robbery of the Wagner Post Office, located at 2200 West Century Boulevard in Los Angeles.  Prior to the robbery, William Crosby was assigned as an employee at the Wagner location and informed defendant and other co-conspirators of the approximate date and time that a USPS truck carrying registered mail bags containing USPS cash proceeds would leave the Wagner location.

Later the same day, defendant traveled to the Wagner location to facilitate and oversee the robbery.  During the robbery, William Crosby and defendant served as lookouts as a co-conspirator drove a vehicle head-on toward the marked USPS truck.  A passenger co-conspirator exited the vehicle, displayed a firearm to victim D.L., and threatened D.L.  In response, D.L. exited the cab of the truck with the coconspirator following D.L. with the firearm.  During this time, the conspirator told D.L., "I don't want to hurt you, hurry up."  D.L. then opened the USPS truck trailer.  The armed co-conspirator then stole a registered mail bag containing approximately $37,658 in USPS cash proceeds.

**B.   March 1, 2018 Robbery**

On March 1, 2018, defendant helped plan and facilitate the robbery of a USPS truck carrying the registered mail bags containing USPS cash proceeds departing the Dockweiler Post Office.  To that end, defendant rented a Mercedes G-Wagon Sports Utility Vehicle ("SUV") and traveled to the Dockweiler Post Office where he waited in the SUV for the USPS truck.

After the USPS truck left the Dockweiler location, defendant, William Crosby, and co-conspirators pursued the USPS truck (in their respective vehicles) onto the 110 Freeway.  As the USPS truck exited the 110 Freeway, defendant maneuvered his vehicle to block the truck's exit from the off-ramp.  William Crosby then maneuvered his vehicle behind the USPS truck where he could serve as a lookout and help box in X.W.'s truck.

A co-conspirator in a third vehicle then stopped behind William Crosby's vehicle and ran up to the USPS truck, brandished and pointed a handgun at victim X.W., and ordered X.W. out of the truck. Defendant waited and continued to box-in X.W.'s truck until his co-conspirator got X.W. from the truck before he continued driving onto Slauson Avenue.

The co-conspirator then grabbed X.W. by the collar and ordered X.W. to open the USPS truck while still pointing the gun at X.W. In response, X.W. opened the back of the USPS truck, and the co-conspirator grabbed a registered mail bag containing approximately $72,563 in USPS cash proceeds and fled.

3

## III. SENTENCING CALCULATION

### A.    The Presentence Report

The USPO concluded that defendant has a total offense level of 31.  (PSR ¶ 76.)  This results from the following calculations:

| | | |
|---|---|---|
| Base Offense Level: | 20 | (USSG § 2B3.1(a)) |
| Property of Post Office | +2 | (§ 2B3.1(b)(2)(A)) |
| Physical Restraint | +2 | (§ 2B3.2(b)(4)(B)) |
| Firearm Used | +6 | (§ 2B3.1(b)(2)(B)) |
| Loss of more than $20,000 | +1 | (§ 2B3.1(b)(7)(B)) |
| Multi-Count Adjustment | +1 | (§ 3D1.4) |

The USPO recommended that defendant receive a three-level reduction for acceptance of responsibility, which brings defendant's total offense level to 30.  The government agrees with these calculations.

With respect to criminal history, the USPO found that defendant had no criminal history points, which places defendant in criminal history category I.  (PSR ¶¶ 65-66.)  The government agrees with this calculation as well.

Based on the foregoing calculations, the USPO determined defendant's Guidelines range is 97 to 121 months' imprisonment, two to five years of supervised release, a fine of up to $250,000, $110,221 in restitution, and a mandatory special assessment of $100. (PSR ¶¶ 105-117.)

### B.    Response to Defendant's Sentencing Arguments

On November 6, 2019, defendant filed his sentencing memorandum. Defendant's sentencing position argues for two reductions in the offense level.  (CR 172.)  First, defendant argues that he qualifies for a two-level minor role reduction, and, second, defendant argues

4

that a multi-count adjustment is inappropriate.  Both arguments are without merit.

### 1.   Minor Role

Defendant's entire minor role argument is premised on the factually incorrect argument that defendant's "sole role was that of a lookout." (CR 172, p. 3.)  This is flatly contradicted by the stipulated factual basis in the Plea Agreement (CR 145), which includes that "defendant blocked the USPS truck's exit in his Mercedes SUV and blocked the USPS truck's exit from the off-ramp." (CR 145, p. 8.)  This action was critical because defendant used his rented Mercedes SUV to block the USPS truck, which allowed a co-conspirator in a different vehicle to run up to the USPS truck's door, brandish and point a firearm at the victim and order him from the vehicle.  This is clearly far beyond the role of a mere "lookout."[1]

Further, the Plea Agreement includes language identifying defendant's broader managerial and organizational role. Specifically, the Plea Agreement states as to the February 1, 2018 robbery, "defendant and his co-conspirators organized the armed robbery of a USPS truck" and, as to the March 1, 2018 robbery, "defendant helped plan" the robbery. (CR 145, p. 7.) Indeed, the evidence, including cell phone calls records, has indicated that defendant was at the very least an equal partner with co-defendant W. Crosby in the planning and recruiting of other participants.  The

---

[1] Notably, because of the way the Guidelines are calculated, with two separate offense, which then result in a multi-count adjustment, even assuming arguendo the Court were to accept defendant's argument as to the February 1, 2018 robbery, it would not impact the overall Guidelines calculation.

Plea Agreement is consistent with this.  Defendant was far from a minor participant, who was brought in simply for a small role.

Defendant also argues that defendant "was not a postal worker or had any inside information as to plan the robbery; was not the leader, manager, or organizer; nor did he commit the actual robbery." (CR 172.)  Of course, none of these are determinative, or even especially indicative, of a minor role.  If defendant were a postal worker, he would have received an additional sentencing Guidelines enhancement for abuse of position of trust, as co-defendant William Crosby did.  That he is not an organizer or leader in no way means he played a minor role.  Finally, although defendant did not actually hold the gun, on March 1, 2018, defendant drove the car that trapped the victim's vehicle, thereby positioning his vehicle such that the victim had no path to escape.

### 2.   Multi-Count Adjustment

Defendant also argues that a multi-count adjustment should not apply.  Defendant's primary argument is that because he did not plead to counts related to the February 1, 2018 robbery it does not count for Guideline purposes and thus does not lead to a multi-count adjustment.

As an initial matter, defendant clearly admitted his role in the February 1, 2018 robbery in his factual basis.  (CR 145, pp. 6-7.) The mere fact that defendant did not pled to a count related to this conduct does not negate the relevance for Guidelines purposes. Defendant's argument appears to be that because defendant did not plead to a specific count related to February 1, 2018, he cannot be held accountable for it.  This ignores the language and structure of § 1B1.2(c), which states "a plea agreement . . . containing a

6

stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."  By its own terms, 1B1.1(c) provides that a plea agreement establishing that defendant committed additional offenses shall be sufficient to establish defendant committed counts related to those additional offenses.  Similarly, § 1B1.2(c) rejects the rigid count based approach to which defendant is arguing.[2]  The example in Application Note 3 to § 1B1.2 is directly on point to the facts in this case: "Subsection (c) provides that in the case of a stipulation to the commission of additional offense(s), the guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated. For example, if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery."

U.S.S.G. § 1B1.3 also specifically allows the Court to consider (A) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and (B) "in the case of a jointly undertaken criminal activity . . . all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that

---

[2] Defendant also argues that "[t]he parties agreed to certain sentencing factors, none of which addresses multiple count adjustments or enhancement therefor (sic)."  (CR 172, p. 4.)  But the Plea Agreement specifically provides "[d]efendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate." (CR 145, p.9.)

criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a). While defendant argues that there was no common "criminal plan, scheme, endeavor, or enterprise," (CR 172, p.4.) this ignores the common co-conspirators involved in both robberies (specifically, defendant and his half-brother), that both robberies targeted postal trucks, and the common manner in which both robberies occurred. This was a "jointly undertaken criminal activity."

## IV. A SENTENCE OF 121 MONTHS' IMPRISONMENT IS REASONABLE AND APPROPRIATE

The government submits that a sentence of 121 months' imprisonment followed by five years' supervised release is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a).

### A. Legal Background

"All sentencing proceedings are to begin by determining the applicable Guidelines range," which serves as "the starting point and the initial benchmark" for determining a reasonable sentence. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotation marks and citation omitted). The parties should then be given an opportunity to argue for what they believe is an appropriate sentence. Id. Following argument by the parties, the Court must consider each of the sentencing factors listed in 18 U.S.C. § 3553(a), including the applicable Guidelines range, "to decide if [those factors] support the sentence suggested by the parties." Id.; see also Gall v. United States, 552 U.S. 38, 49 (2007). In the end, the Court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the offense's seriousness, to promote

8

respect for the law, and to provide just punishment; to afford

adequate deterrence; to protect the public; and to provide the

defendant with needed educational or vocational training, medical

care, or other correctional treatment.  See § 3353(a); Carty, 520

F.3d at 991.

**B.   Government's Sentencing Recommendation**

The violent nature of defendant's offenses, including the

lasting effects imposed upon its victims, warrants a 121-month

sentence of imprisonment.  The two robberies involved serious threats

of violence to two unsuspecting victims, both government employees,

who were just doing their jobs.  That fact was seemingly irrelevant

to defendant because he planned and participated in two violent armed

robberies.

The armed robberies also increased in the level of violence, as

the March 1, 2018, robbery involved victim X.W. getting dragged by

his collar by a man holding a gun to him.  X.W.'s experience in

particular revealed the intense toll these types of violent crimes

impose upon their victims.  As the PSR indicates, X.W. "was deeply

affected by the robbery."  (PSR ¶ 25, n.2.)  X.W's supervisor

reported that "X.W. was acting out of character and that he had lost

50 pounds following the robbery.  Co-workers also noticed a change in

his demeanor a change in demeanor as well as his hygiene."  (Id.)

X.W.'s emotional trauma did not end when he left work.  Loved ones

said that after the robbery, X.W. "became paranoid that he was being

followed" and "very concerned about seeing the defendants in the

community."  (Id.)  In September 2018, X.W. took his own life.

Although it is unknown whether the emotional scars suffered from the

robbery caused him to take his own life, but it is clear that this robbery inflicted severe trauma on X.W. while alive.

Defendant's crimes exposed not just the employees, but also the public to serious danger.  Both robberies occurred in the early evening, when innocent civilians were present.  Indeed, on March 1, 2018, there were several occupied vehicles on the ramp when it was targeted.  Had X.W. not been compliant with defendant's co-conspirator's orders, the co-conspirator may have started firing, thereby putting everyone's safety in the vicinity at risk.  These risks were seemingly irrelevant to defendant who assisted in planning and then participated in the two very public robberies involving firearms.

Defendant does not have any criminal history.  The recommended sentence will be defendant's first term of imprisonment.  That being said, defendant did not just participate in a single crime.  In other words, defendant's conduct continued to escalate, and he continued to facilitate conduct that threatened the victims and the public. Defendant images from defendant's social media accounts showed defendant's cavalier attitude toward firearms.[3]

The severe punishment requested will also serve the purposes of both specific and general deterrence.  First, as to specific deterrence, it will deter defendant from participating in future violent crimes.  Given that this is defendant's first felony conviction and first term of imprisonment, the government believes this significant sentence and period of supervised release will

---

[3] An image and video from defendant's Facebook and Instagram pages were filed with the Court as part of the government's pretrial Motion in Limine.  (CR 142, Exhs. 4 and 5.)  Both are incorporated herein.

ensure that defendant is sufficiently deterred from engaging in this conduct moving forward once released from custody.  The government is requesting a five-year term of supervised release, which will help ensure that defendant cannot help facilitate additional robberies and thefts.   Second, and more important, as to general deterrence, the sentence will make clear that gun crimes cannot be tolerated and that those who use firearms to terrorize and steal from others, especially government employees, will face harsh punishment.  A significant penalty for this conduct is needed in order to make clear that it will not be tolerated.

Finally, the government believes that the requested sentence avoids unwarranted sentencing disparities with other defendants in similar circumstances as defendant.  On October 28, 2019, this Court sentenced co-defendant William Crosby to 132 months' imprisonment. It is appropriate that William Crosby receive a harsher sentence, considering his position of trust with the USPS and his role in an additional theft of USPS property.  On the other hand, William Crosby had certain mitigation that defendant does not have, including that William Crosby accepted responsibility first in this case and the number of positive character letters, that do not exist here.  The requested sentence accounts for all these factors and the unique facts pertaining to this defendant.  The Court is also entitled to rely on a correctly calculated Guidelines' range in finding that there is no unwarranted disparity between defendant and other offenders convicted of similar offenses.  United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010).  Based upon a consideration of these factors, the government believes the requested sentence is both reasonable and appropriate.

**V.     CONCLUSION**

For the foregoing reasons, the government submits that its recommended sentence is sufficient, but not greater than necessary, given the nature and circumstances of the offense, defendant's history and characteristics, and the need to deter defendant while also protecting the public.  The recommended sentence also reflects the need to punish defendant, promote respect for the law, deter future crimes, and avoid unwarranted sentencing disparities.  See generally 18 U.S.C. § 3553(a).  Accordingly, the government respectfully requests that the Court sentence defendant to 121 months' imprisonment, with five years of supervised release to follow, and order defendant to pay $110,221 in restitution and a $100 special assessment.